## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA      :

           **v.**            :       **CRIMINAL NO. 17-407**

DAVID TONEY,           :
JAMES TOWNSEND,
      a/k/a "Thaddy Ock,"     :
CHERON JACKSON

### GOVERNMENT'S TRIAL MEMORANDUM

The government submits its Trial Memorandum and Motions *In Limine* in advance of the trial of defendants David Toney, James Townsend, and Cheron Jackson. Trial is scheduled to begin on Monday, November 5, 2018.  The government submits this trial memorandum to advise the Court of issues that may be presented at trial. The government requests that it be afforded the opportunity to provide additional written submissions to the Court in response to any defense submissions or in the event that other issues arise during the course of the trial.

## I.    CHARGES

Defendants David Toney, James Townsend, and Cheron Jackson are charged in the Indictment with the following: conspiracy to distribute 5 kilograms or more of cocaine, in violation of Title 21, United States Code, Sections 846 and 841(a)(1), (b)(1)(A); three counts of distribution of cocaine, in violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(C); one count of possession of a firearm and ammunition in furtherance of drug trafficking, in violation of Title 18, United States Code, Section 924(c)(1); one count of possession with the intent to distribute, and aiding and abetting the possession with the intent to distribute, 500 grams

or more of cocaine, in violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(B), and Title 18, United States Code, Section 2; and one count of possession with the intent to distribute, and aiding and abetting the possession with the intent to distribute, 500 grams or more of cocaine, within 1,000 feet of housing facility owned by a public housing authority, in violation of Title 21, United States Code, Section 860(a).

## II.   <u>SUMMARY OF EVIDENCE</u>

The Federal Bureau of Investigation, Pennsylvania State Police, and City of Chester Police Department, conducted an investigation of a drug trafficking group (DTG) involved in the distribution of bulk quantities of cocaine from in or about January 2015 to on or about December 18, 2015. The defendants charged in this case all played integral roles in the large-scale DTG that distributed bulk quantities of cocaine to a core group of distributors in Philadelphia and the City of Chester.

As one of the leaders of the DTG, defendant JAMES TOWNSEND obtained bulk quantities of cocaine from co-defendant DAVID TONEY, his source of supply in Philadelphia who distributed kilogram quantities of cocaine to TOWNSEND.  TOWNSEND took the cocaine he purchased from TONEY to 1554 Rainer Road in Chester, where TOWNSEND cut and bagged the cocaine for the purpose of re-distribution. TOWNSEND then passed off the cocaine to co-defendant, CHERON JACKSON, who stored the cocaine at her residence in a public housing facility in Chester.

When the DTG's core group of distributors needed cocaine, they contacted TOWNSEND.  Thereafter, TOWNSEND would call JACKSON and instruct her to bring him quantities of cocaine for him to deliver to the distributor. TOWNSEND had such an established

relationship with his conspirators that he both obtained and distributed thousands of dollars' worth of cocaine on credit.

TOWNSEND used different locations to prepare, stash and traffic the cocaine, including but not limited to 1554 Rainer Road in Chester Township, JACKSON's residence at 1425 Wright Terrace, and his mother's residence at 1030 Butler Street in Chester. He used his own residence in Delaware to store a portion of the proceeds from his drug trafficking operation. On December 18, 2015, law enforcement seized approximately $23,000 cash in TOWNSEND's house in Delaware.

During the course of the investigation, law enforcement conducted over five months' of a court-approved wiretap investigation of phone calls and text messages between members of the DTG, which led to hundreds of relevant phone calls in which the members discussed and conducted their drug trafficking activities. Law enforcement also made controlled purchases of cocaine from TOWNSEND, using a cooperating source, which were surveilled and audiotaped by law enforcement.

The DTG used coded and encrypted language in an effort to avoid law enforcement detection in the event of a wiretap investigation. During the course of this year-long investigation, members of the DTG, including defendant TOWNSEND, often times detected surveillance personnel and warned other members of the DTG about police presence in the area. When they suspected one of their members had been arrested by law enforcement, instead of stopping, they simply changed their telephone numbers to ensure the continued success of their trafficking operation.

After using various investigative techniques, including the controlled purchases, the

Pennsylvania State Police, obtained authorization to intercept various cellular telephones from Pennsylvania Superior Court Judge Victor Stabile through the Pennsylvania Attorney General's Office. The following telephones were intercepted:

1. From July 31, 2015, until August 10, 2015, a TIII wiretap (12-10 E.D. 2015) was conducted on cellular telephone number 267-992-1960 of Byron Parker.  Court Order was signed on July 29.

2. From August 17, 2015, until August 10, 2015, a TIII witap (12-11 E.D. 2015) was conducted on cellular telephone number 267-315-8645 of Byron Parker.  Court Order was signed on August 13, 2010.

3. From August 31, 2015, until October 5, 2015, 2015, a TIII wiretap (12-12 E.D. 2015) was conducted on cellular telephone number 610-570-7762 of James Townsend.  Court Order was signed August 28, 2015.  Court Order authorizing interception was renewed once on September 29, 2015.

4. From September 30, 2015, until October 5, 2015, 2015, a TIII wiretap (12-13 E.D. 2015) was conducted on cellular telephone number 215-558-8370 of David Toney.  Court Order was signed September 29, 2015.

5. From October 23, 2015, until November 13, 2015, 2015, a TIII wiretap (12-14 E.D. 2015) was conducted on cellular telephone number 610-998-5120 of James Townsend.  Court Order was signed October 22, 2015.

6. From November 20, 2015, until December 18, 2015, 2015, a TIII wiretap (12-15 E.D. 2015) was conducted on cellular telephone number 610-400-4583 of James Townsend.  Court Order was signed November 20, 2015.

Defendants TOWNSEND, TONEY and JACKSON, among other co-conspirators were intercepted pursuant to these Court-authorized interceptions.[1]

### Narcotics and Firearms Seizures

The government will introduce evidence of firearms and narcotics seized and/or

---

[1]    A number of the intercepted conversations were in "code." The government will call a drug expert to discuss the fact that drug dealers often talk in "code" when on the telephone.

recovered during the course of, and in furtherance of, the conspiracy, including but not limited to:

- The seizure of one Armalite AR-10 – 7.62 rifle, Serial Number 306782, loaded with two magazines; a Glock 23 .40 Caliber handgun bearing serial number UKL695, loaded with 15 rounds of ammunition; one Ekol Sava Magnum 9mm pistol, serial number ESV1340403, unloaded, with no magazine; One P.Beretta .765 caliber pistol, serial number 536925, loaded with three rounds of ammunition; money counters; digital scales; and $10,000 from 4181 Leidy Avenue, Philadelphia, PA, the residence of David Toney.

- The seizure of Taurus 9mm handgun w/ 8 rounds ammunition; 49 Rounds .357 ammunition; 39 Rounds .25 auto ammunition; 12 Rounds .45 auto ammunition; 1 Round .40 Caliber ammunition; 20 Rounds 12 Gauge Shotgun ammunition; 5 firearm magazines; (2) 12 Gauge, (3) .22 long rifle; $41,030.00 U.S.C.; ARBE Cocaine Press; a digital scale; and Packaging Materials from the Delaware residence of David Toney.

- The seizure of razor blades; a gallon of acetone; a gallon bag of boric acid; and gallon bag containing cocaine residue, from a residence rented by defendant James Townsend, 1554 Rainer Road.

- The seizure of two kilograms of cocaine; $1,535.00; and three cellular phones in the residence of Cheron Jackson, 1425 Wright Terrace.

In order to streamline the presentation of evidence, the government may request that defense counsel stipulate to the weights and types of controlled substances recovered/seized throughout the investigation.

## III.  LEGAL STANDARDS

The government describes the general legal principles which should govern at trial, and details the law concerning various evidentiary issues that may arise. Section A, below, deals with Count One, and provides a comprehensive discussion not only of the law of conspiracy but also of the legal standards governing admission of evidence to prove a conspiracy. This section also

describes the bases for admission of evidence as to other, substantive, counts.  Section B is a

shorter section which provides an outline of the essential elements of other counts at issue in this

case. Section C will address certain trial issues. Section D will address additional issues.

### A.      Conspiracy: Count One

   1.      <u>Conspiracy Generally.</u>

Where, as here, the indictment charges the existence of a conspiracy containing multiple

members, the United States must provide evidence at trial that will allow a reasonable fact finder

to conclude beyond a reasonable doubt that the defendant and at least one other person shared a

"unity of purpose" or the intent to "achieve a common goal" and an agreement to "work together

toward the goal." *United States v. Applewaite*, 195 F.3d 679, 684 (3d Cir. 1999) (citations

omitted).  The United States is not required to prove the existence of an express or formal

agreement; "a tacit understanding is sufficient." *Ianelli v. United States*, 420 U.S. 770, 777 n.10

(1975).  Further, proof of the existence of an agreement may be established entirely by

circumstantial evidence.  Conspiracy law merely requires that the inferences drawn have a

logical and convincing connection to the evidence.  *Applewaite*, 195 F.3d at 684.  Moreover,

"juries are free to use their common sense and apply common knowledge, observation, and

experience gained in the ordinary affairs of life when giving effect to the inferences that may

reasonably be drawn from the evidence." *United States v. Ramirez*, 954 F.2d 1035, 1039 (5th

Cir. 1992).  It bears observing that the government, to sustain a conspiracy conviction, need only

show sufficient evidence that the defendant conspired with "someone -- anyone." *United States*

*v. Pressler*, 256 F.3d 144, 149 (3d Cir. 2001) (*quoting United States v. Obialo*, 23 F.3d 69, 73

(3d Cir. 1994)).

### 2.    Events Not Specifically Alleged in Count One

Title 21, United States Code, Section 846, does not require that the government allege or prove an overt act in order to prove a violation of the statute.  There are a wide variety of facts adverted to in the indictment, count one; there are also a wide variety of facts that were not alleged in the indictment, but which prove the conspiracy. This additional evidence relates directly to the conspiracy, and is admissible despite the fact that it is not specifically discussed in the indictment.  *See United States v. Gibbs*, 190 F.3d 188, 217 (3d Cir. 1999) (holding that defendant's participation in uncharged acts of violence was admissible as direct proof of the conspiracy with which he was charged); *United States v. Thai*, 29 F.3d 785, 812-13 (2d Cir. 1994)  ("[i]t is clear the Government may offer proof of acts not included within the indictment, as long as they are within the scope of the conspiracy . . . An act that is alleged to have been done in furtherance of the alleged conspiracy . . . is not an 'other' act within the meaning of Rule 404(b); rather it is part of the very act charged.") (internal quotations and citations omitted). In *United States v. Cross*, 308 F.3d 308 (3d Cir. 2002), the Third Circuit explained that "acts are intrinsic when they directly prove the charged [crime]."

### 3.    Admissibility of Co-Conspirator Statements.

Federal Rule of Evidence 801(d)(2)(E) provides that "a statement made by a co-conspirator of a party during the course and in furtherance of that conspiracy" is not hearsay and may be admitted as evidence against a co-conspirator.  In order for a court to admit the co-conspirator statement, the government must prove that (1) a conspiracy existed, (2) the declarant and the defendant were both members of the conspiracy, (3) the statement was made in the course of the conspiracy; and 4) the statement was made in furtherance of the conspiracy.

*United States v. Bourjaily*, 483 U.S. 171, 175 (1987); *United States v. McGlory*, 968 F.2d 309, 333-34 (3d Cir. 1992); *United States v. Gambino*, 926 F.2d 1355, 1360 (3d Cir. 1991).

  In making a preliminary factual determination as to the existence of a conspiracy and the defendant's participation in it, courts may consider the offered hearsay statement itself. *Bourjaily*, 483 U.S. at 180-81. "[T]here is little doubt that a co-conspirator's statements could themselves be probative of the existence of a conspiracy and the participation of both the defendant and the declarant in the conspiracy." *Id; see also McGlory*, 968 F.2d at 334. The district court should consider the totality of the circumstances when deciding the admissibility of such evidence. "The circumstances surrounding the statement, such as the identity of the speaker, the context in which the statement is made, or evidence corroborating the contents of the statement," should be considered by the trial court. See Fed. R. Evid. 801(d)(2) (Advisory Committee Notes); *United States v. Traitz*, 871 F.2d 368, 399 (3d Cir. 1989). When determining the admissibility of a co-conspirator statement, the existence of the conspiracy and the party's participation in that conspiracy need only be proved by a preponderance of the evidence. *Bourjaily*, 483 U.S. at 175.

  Although casual conversations between co-conspirators are inadmissible, statements that, among other things, maintain cohesiveness and convey information relevant to conspiratorial objectives are in furtherance of the conspiracy and admissible under Rule 801(d)(2)(E). *Traitz*, 871 F.2d at 399. Accordingly, "statements of a co-conspirator identifying a fellow co-conspirator as his source of narcotics are statements made in furtherance of the conspiracy." *United States v. Lambros*, 564 F.2d 26, 30 (8th Cir. 1977); *see United States v.*

*Munson*, 819 F.2d 337, 341 (1st Cir. 1987); *United States v. Anderson*, 642 F.2d 281, 285 (9th Cir. 1981).

The Third Circuit has commented that the "in furtherance" requirement is to be given a broad interpretation. *United States v. Gibbs*, 739 F.2d 838, 843 (3d Cir. 1984); *United States v. DePeri*, 778 F.2d 963, 981 (3d Cir. 1985). Although the "during the course of" and "in furtherance" requirements do not overlap entirely, they are closely related. *United States v. Ammar*, 714 F.2d 238, 253 (3d Cir.1983). While mere narratives of past events or mere idle chatter that has no current purpose are not generally deemed to occur in furtherance of the conspiracy, statements that "provide reassurance, serve to maintain trust and cohesiveness among co-conspirators, or inform each other of the current status of the conspiracy" further the conspiracy. *Id,* at 252; *see United States v. Harris*, 908 F.2d 728, 737 (11th Cir. 1990); *United States v. Hudson*, 970 F.2d 948, 958-59 (1st Cir. 1992). For example, statements which are relevant to the distribution of the proceeds of the conspiracy are considered in furtherance of the conspiracy. *Ammar*, 714 F.2d at 253. In order for statements to be deemed "in furtherance of the conspiracy," they need not actually "further" the conspiracy; it is sufficient that a statement was intended to promote the conspiracy, even if it did not actually do so. *See United States v. Williams*, 989 F.2d 1061, 1068 (9th Cir. 1993); *United States v. Mayes*, 917 F.2d 457, 464 (10th Cir. 1990).

The trial court may admit statements pursuant to the Rule even if the statements relate to a conspiracy not charged in the indictment. *United States v. Ellis*, 156 F.3d 493, 497 (3d Cir. 1998); *United States v. Trowery*, 542 F.2d 623, 626 (3d Cir. 1976). The rationale for this rule is that the co-conspirator provision in Rule 801(d)(2)(E) is merely a rule of evidence founded on

the theory "that a person who has authorized another to speak or act to some joint end will be held responsible for what is later said or done by his agent . . ." *Trowery*, 542 F.2d at 626.

4.     Narcotics Dealing as Evidence of Motive to Possess Firearms

It is well-settled that evidence of narcotics dealing is admissible to show a defendant's motive for possessing a firearm.  *See, e.g., United States v. Jacobs*, 44 F.3d 1219, 1225 (3d Cir. 1995) ("[e]vidence tending to show that the defendant was a participant in the selling of drugs was relevant under Rule 402 and was admissible under Rule 404(b) to show that the defendant had a motive for carrying a firearm"); *United States v. Rankin*, 902 F.2d 1344, 1346 (8th Cir. 1990) ("[e]vidence that [the defendant] possessed cocaine could establish a motive for possessing a weapon").  *United States v. Rivera*, 844 F.2d 916, 926 (5th Cir. 1987) (evidence that defendant is narcotics trafficker is evidence of motive to possess weapons).  Thus, in this case, the evidence of the drug trafficking conspiracy is relevant to and supports the allegations of gun possession by various defendants.[2]

5.     Possession of Firearms as Evidence of Intent to Distribute Narcotics

Guns are an acknowledged "tool of the trade" in the drug business.  Possession of weapons, in particular handguns, along with other evidence, is powerful circumstantial evidence that an individual is in the drug trafficking trade.  *United States v. Price*, 418 F.3d 771, 779 (7th Cir. 2005); *United States v. Adams*, 759 F.2d 1099, 1108 (3d Cir. 1983) (admission of Uzi type

---

[2]  Obviously counts charging a violation of 18 U.S.C. § 924(c) directly implicate the drug trafficking activity of the defendants charged, since drug trafficking is an element of the crime.  Drug trafficking activity is also admissible to prove simple possession of a firearm by a felon, charged under 18 U.S.C. § 922(g), because the drug trafficking supplies an obvious motive for possession of a firearm.  Finally, in most instances evidence of drug trafficking activity in this case is part and parcel of the conspiracy, and need not be admissible on any other ground.

weapons during narcotics trial not unduly prejudicial; guns are "tools of the trade."). In this case

the firearms and ammunition evidence is admissible to prove the drug conspiracy and other drug

charges.

      6.    <u>Threats to Witnesses</u>

The government does not intend to present any threat testimony at trial. If the

government for any reason decides that such testimony must be introduced, it will raise the issue

with the court and counsel outside the presence of the jury, with ample time to deal with any

objections out of the presence of the jury before hearing the testimony.

There have been threats directed against witnesses through the course of this case and in

fact, one witness was killed during the timeframe of the investigation. Threats to witnesses are

routinely introduced as conduct in furtherance of a criminal conspiracy. <u>See</u>, <u>United States v.</u>

<u>Gibbs</u>, 190 F.3d 188 (3d Cir. 1999); <u>United States v. Sherman</u>, 440 F.3d 982, 991 (8th Cir.

2006). As the Third Circuit stated,

> In cases where the incident offered is a part of the conspiracy alleged in the
> indictment, the evidence is admissible under Rule 404(b) because it is not an "other"
> crime. The evidence is offered as direct evidence of the fact in issue, not as
> circumstantial evidence requiring an inference as to the character of the accused.
> Such proof ... may be extremely prejudicial to the defendant but the court would
> have no discretion to exclude it because it is proof of the ultimate issue in the case.

<u>Gibbs</u>, 190 F.3d at 217-18.

Threats to a witness are also admissible as evidence of consciousness of guilt. "Evidence

of threats against witnesses is routinely admitted against criminal defendants to show

consciousness of guilt." <u>United States v. Garrison</u>, 168 F.3d 1089, 1093 (8th Cir. 1999); <u>see</u>

<u>United States v. Gatto</u>, 995 F.2d 449, 454 (3d Cir. 1993) (threatening look in courtroom

admissible); <u>United States v. Gonzalez</u>, 603 F.2d 1272, 1273 (11th Cir. 1983) (death threats

evidence of consciousness of guilt); United States v. Guerrero, 803 F.2d 783, 786 (3d Cir. 1986) (death threats evidence of consciousness of guilt); United States v. Pinto, 394 F.2d 470, 471 (3d Cir. 1967) (death threat to witness "plainly admissible because it was relevant to show consciousness of guilt.")  An effort to assassinate a police witness is admissible to prove defendant's intent to continue in the conspiracy in which he was involved.  United States v. Velazquez, 410 F.3d 1011, 1016 (8th Cir. 2005).

As stated above, although the government does not anticipate presenting any testimony regarding threats as of the filing of this memorandum, if any threats occur during the course of the trial, the government may seek the Court's permission to present such evidence.

7.     Association With Other Conspirators

While presence and association alone cannot establish a defendant's participation in a conspiracy, the jury is permitted to "consider presence and association, along with other evidence, in finding conspiratorial activity by the defendant." *United States v. Chavez*, 947 F.2d 742, 745 (5th Cir.1991).  *United States v. Pompa*, 434 F.3d 800, 806-07 (5th Cir. 2005); *accord United States v. Mickelson*, 378 F.3d 810, 821(8th Cir. 2004) (association, while not enough on its own to prove conspiracy, is admissible with other evidence to prove conspiracy).  Photographs of various defendants together is admissible to prove a conspiracy.  *United States v. Price*, 418 F.3d 771, 782 (7th Cir. 2005).  The government will introduce numerous police reports documenting contacts with law enforcement wherein multiple members of DTG were together, and may introduce photographs of defendants together.

8.    <u>Counter-Surveillance Activity</u>

There is evidence that defendants engaged in some counter-surveillance activity in this case, such as acting as lookouts for one another during drug transactions.  Evidence that a defendant has conducted counter-surveillance is admissible to prove defendant was involved in a drug conspiracy. *See Price*, 418 F.3d at 779 (copy of "police alert" recovered in defendant's home admitted).

9.    <u>Drug Sales Not Involving Defendant</u>

Drug sales conducted during the course of a conspiracy, even when they did not involve a defendant, are admissible to prove the nature and extent of the conspiracy, because each conspirator is liable for the acts of his co-conspirators, undertaken during and in furtherance of the conspiracy, even when he was not aware of the actions of his co-conspirators.  *United States v. Johnston*, 353 F.3d 617, 624 (8th Cir. 2003).

10.    <u>Constructive Possession</u>

Possession of drugs or firearms need not be actual or exclusive. "[O]wnership, dominion, or control over the contraband itself, or dominion or control over the premises in which the contraband is concealed. . ." amounts to "constructive possession."  *United States v. Smith*, 930 F.2d 1081, 1085 (5th Cir. 1991) (possession of firearms in house defendant co-occupied; defendant not present when guns seized) (citations omitted).

> Constructive possession exists when a person . . . knowingly has the power and the intention at a given time to exercise dominion and control over an object, . . . and [it] may be proved by direct or circumstantial evidence. It is not necessary that such evidence remove every reasonable hypothesis except that of guilt.

*United States v. Rivera*, 844 F.2d 916, 925 (2d Cir. 1987) (possession of firearms in house defendant co-occupied) (citations omitted).  "It is not necessary that the exercise of dominion and

control by others be disproved; it is only necessary that the evidence support the jury's finding that [defendant] exercised dominion and control over the weapon." Id., at 926. *See also United States v. DePugh*, 993 F.2d 1362, 1364 (8th Cir. 1993) (gun found in residence; defendant not present).

Similarly, narcotics may be constructively possessed by one exercising dominion and control over a house. *United States v. Wilson*, 107 F.3d 774, 779 (10th Cir. 1997) (no direct evidence that defendant owned or rented premises; letters, documents and photographs of defendant found in upstairs bedroom; drugs found in yard). Dominion and control can be inferred from use of a property. *See Jackson v. Byrd*, 105 F.3d 145, 150 (3d Cir. 1996).

11.   Expert Narcotics Testimony

"In cases involving narcotics trafficking, courts have admitted a broad range of expert testimony concerning the 'modus operandi' of the drug trade." *United States v. McGlory*, 968 F.2d 309, 345 (3d Cir. 1992); *see also United States v. Watson*, 260 F.3d 301, 308 (3d Cir. 2001) ("[E]xpert testimony concerning the modus operandi of individuals involved in drug trafficking does not violate Rule 704(b)."). It is well established that police officers may testify as experts concerning the methods and practices employed in a particular area of criminal activity, *United States v. Pungitore*, 910 F.2d 1084, 1149 (3d Cir. 1990), including the operations of a drug trafficking ring, United States v. Ginsberg, 758 F.2d 823, 830 (2d Cir. 1985); *United States v. Montas*, 41 F.3d 775, 783-84 (1st Cir. 1994). Courts have upheld the admissibility of expert testimony by investigative agents who are properly qualified as experts regarding the "tools of the trade" for narcotics trafficking. *United States v. Foster*, 939 F.2d 445, 453 (7th Cir. 1991); *United States v. Solis*, 923 F.2d 548, 550-51 (7th Cir. 1991) (expert testimony upheld on the use

14

of beepers in narcotics trafficking); *United States v. Monu*, 782 F.2d 1209, 1210-11 (4th Cir.

1986) (expert testimony upheld on the use of scales in the drug trade); *United States v. Navarro*,

90 F.3d 1245, 1259-60 (7th Cir. 1996).  In addition, "experienced narcotics agent[s] may testify

about the significance of certain conduct or methods of operation to the drug distribution

business, as such testimony is often helpful in assisting the trier of fact understand the evidence."

*United States v. Griffith*, 118 F.3d 318, 321 (5th Cir. 1997), *quoting United States v. Washington*,

44 F.3d 1271, 1283 (5th Cir. 1995).

The government intends to introduce the testimony of Pennsylvania State Police Sergeant

Michael Skahill, who is an expert in the operations of drug trafficking organizations. The

expert's testimony, in this case, is admissible under <u>Daubert</u> and Federal Rules of Evidence 702

and 701, as he will provide a reliable opinion based on years of experience.  The district court

should find that the expert possesses "areas of specialized knowledge outside the common

experience of the jury," and that he is qualified to testify as an expert "in drug enterprises and

their organization; as well as the trafficking in narcotics, including cocaine and crack cocaine."

This testimony, concerning a variety of aspects of drug trafficking organizations, is, in

fact, specialized knowledge which is not within the purview of the average juror. Sergeant

Skahill will provide detailed information about law enforcement techniques including

surveillance, monitoring of various electronic communications, and the execution of search

warrants.  In addition, his expertise, gained through hundreds of investigations concerning how

narcotics traffickers protect their turf, avoid losing the large amounts of currency they obtain,

and attempt to avoid detection by police, is not knowledge available to the average citizen or

juror.  Sergeant Skahill is expected to testify that the circumstances surrounding the seizure of

different drug and drug paraphernalia evidence is consistent with distribution activity, and not with possession for mere personal use.  Sergeant Skahill is also expected to testify that the circumstances surrounding the seizure of various firearms in this case are consistent with possession of the firearms.

### B.     Essential Elements

**Conspiracy to Distribute 5 kilograms or more of cocaine (Count One)**

To establish a violation of 21 U.S.C. § 846, (conspiracy to distribute 5 kilograms or more of cocaine), the government must prove the following elements beyond a reasonable doubt:

1.     That two or more persons agreed to distribute a controlled substance;

2.     The defendant was a party to or member of that agreement;

3.     The defendant joined the agreement or conspiracy knowing of its objective to distribute a controlled substance and intending to join together with at least one other alleged conspirator to achieve that objective; that is, that the defendant and at least one other alleged conspirator shared a unity of purpose and the intent to achieve that objective; and

4.     The amount of cocaine involved in the conspiracy and which was attributable to and/or reasonably foreseeable to the defendant weighed 5 kilograms or more.

**Distribution of cocaine (Counts Two, Three, Four)**

To establish a violation of 21 U.S.C. § 841(a)(1) (distribution of cocaine), the government must prove the following elements beyond a reasonable doubt:

1.     The defendant distributed a controlled substance;

2.     The defendant did so knowingly or intentionally; and

3.     The controlled substance was a mixture or substance containing a detectable amount of cocaine.

**Possession of a firearm and ammunition in furtherance of a drug trafficking crime (Count Five)**

To establish a violation of 18 U.S.C. 924(c)(1)(A) (possession of a firearm and ammunition in furtherance of a drug trafficking crime), the government must prove the following elements beyond a reasonable doubt:

1.  The defendant committed a drug trafficking crime, here that being, distribution of or possession with intent to distribute, cocaine, as charged the indictment; and,

2.  The defendant possessed a firearm during and in relation to these crimes; and

3.  The defendant knowingly possessed the firearm.

**Possession with the intent to distribute 500 grams or more of cocaine (Count Six)**

To establish a violation of 21 U.S.C. § 841(a)(1) (possession with intent to distribute a controlled substance), the government must prove the following elements beyond a reasonable doubt:

1.  The defendant(s) knowingly possessed a controlled substance, here a mixture and substance containing a detectable amount of cocaine;

2.  The defendant(s) possessed the controlled substance with the the intent to distribute some or all of it to at least one other person; and

3.  The defendant possessed the cocaine in the amount charged in the indictment, here 500 grams or more.

**Possession with intent to distribute 500 grams or more of cocaine within 1000 feet of a housing facility owned by a public housing authority (Count Six)**

To establish a violation of 21 U.S.C. § 860(a) (possession of controlled substances with intent to distribute, within 1000 feet of a housing facility owned by a public housing authority),

the government must prove the following elements beyond a reasonable doubt:

1.   That defendant possessed controlled substances, here, a mixture and substance containing a detectable amount of cocaine, with the intent to distribute;

2.   The quantity of the cocaine, was an amount equal to or greater than the amount specifically charged, here 500 grams or more; and

3.   The defendant possessed the cocaine within 1,000 feet of the real property comprising a housing facility owned by a public housing authority.

**Aiding and Abetting**

To establish a violation of 18 U.S.C. § 2 (aiding and abetting), the government must prove the following elements beyond a reasonable doubt:

1.   The defendant knew that the crime charged was to be committed or was being committed;

2.   The defendant knowingly did some act for the purpose of aiding, commanding or encouraging the commission of that crime, or willfully caused someone to commit the crime; and

3.   The defendant acted with the intention of causing the crime charged to be committed.

Before a defendant may be found guilty as an aider or an abettor to the crime, the government must also prove, beyond a reasonable doubt, that someone committed each of the essential elements of the offense charged.

C.   **Potential Trial Issues**

1.   Expert Testimony

Rule 702 of the Federal Rules of Evidence provides:

18

> If scientific, technical, or other specialized knowledge will assist the trier
> of fact to understand the evidence or to determine a fact in issue, a witness
> qualified as an expert by knowledge, skill, experience, training, or
> education, may testify thereto in the form of opinion or otherwise.

Fed. R. Evid. 702.  The government expects to introduce expert testimony of PSP Sergeant

Michael Skahill as detailed above. In addition, the government expects to call an expert in

firearms examination to testify about the nature and operability of the firearms and ammunition

recovered in this case, as well as the location of their manufacture and, absent a stipulation from

defense counsel, the government will also call drug analysts to testify regarding the drug

analyses conducted on the narcotics seized during the investigation.

2.      Phone Records and Summary Chart

The government has made available telephone records for cellular telephones described

above. The government expects to call a summary witness to present these records in a summary

chart form. A draft copy of the summary chart will be provided to defense counsel prior to the

start of trial. The summary chart will save significant time in presenting the evidence.

3.      Custodian of Records/Potential Stipulations

The government will request that counsel stipulate to the following custodian of records

testimony:

(1)      All toll records (business record certifications will be provided)

(2)      All witness/defendant prior convictions as are deemed relevant and

admissible by the court

4.      Exhibits - Presented in Electronic Format

The government will provide the Court with an exhibit book and defense counsel

19

with exhibit discs prior to the start of trial.  In addition, in order to move quickly and save significant time in presenting the evidence, the government will have the exhibits loaded into a computer using the "Sanctions" program, to allow for their display electronically to the jury.

5.    <u>Potential Stipulations</u>

The government and defense counsel will together provide the Court with any agreed upon "Stipulation(s)" at the start of trial.

6.    <u>Order of Proof</u>

The government respectfully requests the ability to call Sergeant Skahill and Trooper Garcia on multiple occasions.  This practice will allow the evidence to be presented in a chronological, coherent, and more efficient manner.

7.    <u>Audio/Video Recordings and Transcripts</u>

Pursuant to the government's previously filed <u>Starks</u>/Rule 901 motion, the government has provided the audio/video recordings and transcripts of the recorded conversations with defendants and co-conspirators.  The government will play certain video and audio recordings during trial and in order to save time in presenting this evidence the government has synchronized the recordings and transcripts electronically.

**D.    <u>Other issues</u>**

Obviously, potential rebuttal witnesses exist, whose presentation would depend on whether defendants elect to present any defense, and if they do, what they or other witnesses say in the course of that defense.

The government's proposed jury instructions, verdict sheet, *voir dire*, and motions *in limine* have been filed under separate cover.

The United States requests that all witnesses be sequestered with the exception of PSP Sergeant Michael Skahill and PSP Trooper Javier Garcia, the case agents who participated in the investigation and will be assisting the government during the trial.

Respectfully submitted,

WILLIAM M. MCSWAIN
*United States Attorney*


_____*s/*_____
A. NICOLE PHILLIPS
YVONNE O. OSIRIM
*Assistant United States Attorneys*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the Government's Trial

Memorandum has been served by me, this date, by email or electronic filing upon the following

individuals:

Angelo Charles Peruto, Jr., Esquire
chuck@peruto.com
*Counsel for David Toney*

Luis A. Ortiz, Esquire
luisaortiz@comcast.net
*Counsel for James Townsend*

Jeremy H.G. Ibrahim, Esquire
jeremyibrahim.esq@gmail.com
*Counsel for Cheron Jackson*

 /s/
A.  NICOLE PHILLIPS
*Assistant United States Attorney*

DATED: October 28, 2018

22