IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | NO. 17-407 |
| v. | : | |
| | : | CIVIL ACTION |
| DAVID TONEY | : | NO. 20-5117 |
| | : | |

**MEMORANDUM OPINION**

**Goldberg, J.**                                                    **April 15, 2024**

Defendant David Toney ("Toney") filed a *pro se* Motion under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct his Sentence and conviction for possession of a firearm in furtherance of a drug trafficking crime.  Toney alleges his counsel was ineffective for incorrectly advising him about the effect of the discovery and seizure of several firearms from his residence.  Because Toney has failed to show his counsel was ineffective, his Motion will be denied.

**I.     PROCEDURAL HISTORY**

On October 30, 2018, Toney was charged in a superseding indictment with one count of conspiring with two others to distribute 5 kilograms or more of cocaine in violation of 21 U.S.C. § 841(a)(1)(b) and (b)(1)(A), one count of possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c), and aiding and abetting liability pursuant to 18 U.S.C. § 2[1].  These charges resulted from a months-long joint investigation by federal, state, and local law enforcement agencies using physical surveillance and wiretaps, which revealed Toney and his co-defendants were operating a wholesale drug trafficking organization.  Shortly

---

[1]   Toney's charges were first lodged against him on August 2, 2017 in a sealed indictment. ECF No. 1.

after commencement of the trial on November 6, 2018, Toney entered a guilty plea to the above

charges.  He was sentenced on May 13, 2019 to a total of 120 months' imprisonment, followed by

four years of supervised release.[2]  Toney appealed the judgment of conviction, and challenged the

denial of his motion to suppress the drugs and firearms found during execution of search warrants

on his two residences and denial of his motion for a hearing into the veracity of the statements

made in the warrant applications under *Franks v. Delaware* 438 U.S. 154 (1978).  On July 7, 2020,

the Third Circuit Court of Appeals affirmed the judgment.  On October 14, 2020, Toney timely

filed this § 2255 motion.

## II.    LEGAL STANDARD

Under 28 U.S.C. § 2255(a), a prisoner in federal custody may "move the court which

imposed the sentence to vacate, set aside or correct the sentence" and claim:

> the right to be released upon the ground that the sentence was imposed in violation
> of the Constitution or laws of the United States, or that the Court was without
> jurisdiction to impose such sentence, or that the sentence was in excess of the
> maximum authorized by law, or is otherwise subject to collateral attack.

The standards and procedures for adjudicating § 2255 motions are outlined in subsection (b):

> Unless the motion and the files and records of the case
> conclusively show that the prisoner is entitled to no relief, the
> court shall cause notice thereof to be served upon the United
> States attorney, grant a prompt hearing thereon, determine the
> issues and make findings of fact and conclusions of law with
> respect thereto.  If the court finds that the judgment was rendered
> without jurisdiction, or that the sentence imposed was not
> authorized by law or otherwise open to collateral attack, or that
> there has been such a denial or infringement of the constitutional
> rights of the prisoner as to render the judgment vulnerable to
> collateral attack, the court shall vacate and set the judgment aside
> and shall discharge the prisoner or resentence him or grant a new
> trial or correct the sentence as may appear appropriate.

---

[2]    Toney was sentenced to 60 months' imprisonment on Count One (for violating 21 U.S.C. §
841(a)(1)(B), (b)(1)(A)) and to a mandatory, consecutive term of 60 months' imprisonment on
Count Five (for violating 18 U.S.C. § 924(c)).

28 U.S.C. § 2255(b).

Thus, "a district court has discretion whether to order a hearing when a defendant brings a motion to vacate sentence pursuant to 28 U.S.C. § 2255," although there are "limitations on the exercise of that discretion." *United States v. Booth*, 432 F.3d 542, 545 (3d Cir. 2005). "A district court is required to hold an evidentiary hearing unless the motion and files and records of the case show conclusively that the movant is not entitled to relief." *United States v. Scripps*, 961 F.3d 626, 631-632 (3d Cir. 2020). Determining whether a hearing is necessary involves a two-pronged inquiry. First, "the district court 'must consider as true all appellant's nonfrivolous factual claims.'" Second, "it must determine whether, on the existing record, those claims that are nonfrivolous conclusively fail to show" any entitlement to relief. *United States v. Arrington,* 13 F.4th 331, 334 (3d Cir. 2021) (internal quotation marks and citation omitted). If the motion "alleges any facts warranting relief under § 2255 that are not clearly resolved by the record," the district court is "obliged to follow the statutory mandate to hold an evidentiary hearing." *United States v. McCoy*, 410 F.3d 124, 134 (3d Cir. 2005). In considering a motion to vacate a defendant's sentence, "the court must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record." *Gov't. of the V.I. v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989). Bald assertions and conclusory allegations do not provide sufficient grounds to require an evidentiary hearing. *United States v. Donahue*, 792 F. App'x 165, 168 (3d Cir. 2019).

Given that the record in this case clearly shows Toney is not entitled to relief, there is no need for a hearing.

## III.   DISCUSSION

As noted, by his § 2255 motion, Toney seeks to vacate only his guilty plea and sentence as to Count Five of the Superseding Indictment. Specifically, he claims his attorney erroneously

advised him that the "very presence of the firearms at the residence where drug activity occurred established a violation of the statute, i.e., 18 U.S.C. § 924(c)(1)." Def.'s. Mot. Vacate, Set Aside, Correct Guilty Plea, Conviction 2, ECF No. 207.   Toney submits that, if not for this erroneous advice, he would not have pled guilty to the § 924(c) charge in Count Five as he was "actually innocent" and would have insisted on proceeding to trial.  *Id.* at 2-3.

Claims based on ineffective assistance of counsel have long been evaluated under the familiar two-part test first set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  That test requires a movant to show first, that "counsel's performance was deficient," and second, "that the deficient performance prejudiced the defense." *United States v. Haisten*, 50 F. 4th 368, 372 (3d Cir. 2022).  The two *Strickland* prongs may be considered in either order.  *United States v. Washington*, 869 F.3d 193, 206 (3d Cir. 2017).  Indeed, "it is often practical to consider the prejudice prong first" as it is preferable "to avoid passing judgment on counsel's performance when possible." *Id.*

To show a deficient performance, a movant must establish that counsel's actions "fell below an objective standard of reasonableness." *Simon v. Gov't of Virgin Islands*, 929 F.3d 118, 128 (3d Cir. 2019).  This first prong "is necessarily linked to the practice and expectations of the legal community: [t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Padilla v. Kentucky*, 559 U.S. 356, 366 (2010) (quoting *Strickland*, 466 U.S. at 688).  Because "'[n]o particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel, . . . courts must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct,' and 'judicial scrutiny of counsel's performance must be highly deferential.'" *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland* at

4

466 U.S. at 688-690).  A wide berth is given to the strategic decisions of counsel and their professional judgment, and strategic choices must be respected if they are based on professional judgment.  *Haisten*, 50 F. 4th at 372.  "In other words, counsel's strategic choices will not be second-guessed by *post-hoc* determinations that a different trial strategy would have fared better." *Gaines v. Superintendent Benner Twp SCI*, 33 F.4th 705, 712 (3d Cir. 2022) (internal quotation marks and citation omitted).

To prevail, the movant must also establish prejudice – "a showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Simon*, 929 F.3d at 128.  In this regard, the Court must "ask whether there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Padilla*, 559 U.S. at 366.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Workman v. Superintendent Albion SCI*, 915 F.3d 928, 944 (3d Cir. 2019).  This requires a substantial, not just a conceivable likelihood of a different result. *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011).

A guilty plea is constitutionally valid only to the extent that it is "voluntary" and "intelligent." *Bousley v. United States*, 523 U.S. 614, 618 (1998).  "A plea does not qualify as intelligent unless a criminal defendant first receives notice of the true nature of the charge against him." *Id*. (internal quotation marks and citations omitted).  It is neither knowing nor intelligent unless the defendant "has sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970).  Pleas induced by threats, misrepresentations, or promises that are by their nature improper are not voluntary. *Id*. at 755.  But "it is well settled that a voluntary and intelligent plea of guilty made by an accused person,

who has been advised by competent counsel, may not be collaterally attacked." *Mabry v. Johnson*, 467 U.S. 504, 508 (1984).

To obtain a conviction under 18 U.S.C. § 924(c) for possession of a firearm in furtherance of a drug trafficking crime, the Government must show that the firearm was possessed by the defendant to advance or promote criminal activity. *United States v. Bobb*, 471 U.S. 491, 496 (3d Cir. 2006). In making this determination, the following factors are relevant: (1) the type of drug activity being conducted; (2) the type of firearm and its accessibility; (3) whether the weapon is stolen and the status of its possession, *i.e.*, legitimate, or illegal; (4) whether the gun is loaded; (5) its proximity to the drugs or drug profits; and (6) the time and circumstances under which the weapon is found. *Id*. (citing *United States v. Sparrow*, 371 F.3d 851, 853 (3d Cir. 2004)). The "in-furtherance" standard is satisfied if the firearm was kept available for use should it be needed for use during a drug transaction, and the defendant intended the firearm be accessible for that purpose. *United States v. Mainor*, 393 F. App'x 10, 19 (3d Cir. Sept. 3, 2010). Accordingly, the weapon's physical proximity to narcotics may be sufficient to provide the nexus required between the weapon and the drug charges. *Id*. (citing *United States v. Loney*, 219 F.3d 281, 289 (3d Cir. 2000)).

The record in this case shows Toney was not threatened or forced into pleading guilty, that he had sufficient time to meet with and review the terms of the plea with his attorney, that he did in fact do so, and he understood the plea agreement and signed it of his own free will. Tr. Change of Plea Hrg. 12/10/18, 14-15. He also stated he was satisfied with his counsel's representation. *Id*. at 6. Accepting Toney's claim as true that his attorney advised him the mere presence of the firearm at his residence where he engaged in drug trafficking activity constituted the offense of

possession of a firearm in furtherance of a drug trafficking crime, as *Mainor*, *Bobb* and *Loney* make clear, Toney's counsel was not ineffective.

At the Change of Plea Hearing, the Government explained to Toney what elements it needed to establish to prove him guilty of the two offenses to which he was pleading, and summarized the facts it would have shown at trial. Tr. Change of Plea Hrg. 12/10/18, at 18-20.[3] I also asked the Government to summarize the facts it would have proven had this case gone to trial. *Id*. at 20. The Government stated that at least several of the drug transactions were observed through physical and electronic surveillance at two residences belonging to Toney located at 149 Portside Court in Bear, Delaware, and 4181 Leidy Avenue in Philadelphia, resulting in search warrants being obtained and executed on both of those homes. In addition to the drugs, four guns were recovered from the Leidy Avenue property, along with ammunition, digital scales and other items indicating drug distribution activities were taking place there, and $10,000. A fifth firearm was seized from the Portside Court residence, together with several rounds of ammunition and

---

[3]    As to the § 924(c) charge, the Government's attorney explained the elements as follows:

> MS. OSIRIM:  To prove possession of a firearm in furtherance of a drug trafficking crime, the government must prove beyond a reasonable doubt that the Defendant committed a crime. In this case, that is conspiracy to distribute 500 grams or more of cocaine. And in connection with that offense, knowingly possessed firearms in relation to those crimes.

> THE COURT: Okay, those are the elements they would have to prove beyond a reasonable doubt. Do you understand that?

> THE DEFENDANT:  Yes.

> THE COURT:  Okay. Any questions?

> THE DEFENDANT:  No, your Honor.

Tr. 12/10/18, 19-20.

magazines, a cocaine press, digital scale, and other packaging material, and $41,000.  *Id*. at 20-22.
The evidence thus shows there was significant cocaine distribution activity taking place at both of
Toney's residences, in close proximity to numerous firearms with loaded magazines and
ammunition and to the drugs and the profits resulting from their distribution and sale.  *Id*.  Finally,
I reviewed the possible sentence Toney was facing had he not entered the plea agreement.  *Id*. at
7-8.

Given all of the above, Toney entered his guilty plea to Count Five knowingly and
intelligently and the evidence simply does not support a finding that his counsel's performance
was deficient or constitutionally ineffective.

However, even if Toney's counsel's actions fell below the "objective standard of
reasonableness," he cannot show he suffered any prejudice as a result.  Had he gone to trial and
been convicted, Toney was facing a potential sentence of a mandatory minimum five-year term of
imprisonment[4] up to forty years, a mandatory minimum of four years up to a lifetime of supervised
release, and a $5 million fine on Count One, and a mandatory minimum term of five years'
imprisonment to life in prison, consecutive to any other count of conviction, followed by three
years to a lifetime of supervised release, and a $250,000 fine on Count Five.  Guilty Plea
Agreement 2, ¶ 3, ECF No. 129.  After observing Toney sign the guilty plea agreement and
confirming that it was his signature on the agreement, I also verbally advised Toney of these
potential sentences at his Change of Plea Hearing and asked if he understood.  Toney
unequivocally stated that he did.  Tr. Change of Plea Hrg. 12/10/18, 7-9.  And it was further
explained to Toney at his Sentencing that after calculating his offense level and criminal history

---

[4]      Had Toney and the Government not entered the plea agreement, Toney would have been
facing at least a mandatory ten-year term of imprisonment on Count One because of the amount
of cocaine seized – in excess of 5 kilograms.  Tr. Sent. Hrg., at 8, 9-10.

scores under the U.S. Sentencing Guidelines, he would have been facing a sentence of between 157 and 181 months had it not been for the plea agreement which he entered with the Government. Tr. Sent. Hrg. 5/13/19, 4-5.  As a consequence of his plea, Toney was instead sentenced to the mandatory minimum terms of sixty months on both counts for a total term of 120 months or ten years' imprisonment.[5]  The evidence against Toney was overwhelming, and the likelihood of a conviction on both counts was great.  *Id.* at 16. Had he not agreed to plead guilty to the charges against him, Toney's sentence would have been significantly higher.  *Id.* Toney has failed to make the necessary showing that he was prejudiced by his attorney's advice, and his § 2255 motion is therefore denied.

Finally, in addition to not making the requisite substantial showing of the denial of a constitutional right, Toney has also not shown that reasonable jurists would find this assessment of his constitutional claims to be debatable or wrong.  Accordingly, no certificate of appealability shall issue.  *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000); 28 U.S.C. § 2253.

An appropriate Order follows.

BY THE COURT:

_____

Mitchell S. Goldberg,     J.

---

[5]       Pursuant to the plea agreement, Toney pled guilty to the "lesser included offense" of conspiracy to distribute 500 grams or more of cocaine, which mandated a five-year term of imprisonment instead.  *Id*. at 7-10; Guilty Plea Agreement at 1, ¶ 1, 7, ¶ 14.  Also, as part of the plea agreement, the Government and Toney agreed "that the following specific sentence is the appropriate disposition of this case: 120 months' (10 years) imprisonment, 4 years' supervised release, a $200 special assessment, and a fine, if any, as directed by the Court."  Guilty Plea Agreement, at 3, ¶ 5.